1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHERYL ANN GOODWIN,<br><br>               Plaintiff,<br><br>      vs.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of<br>Social Security,<br><br>           Defendant. | ) Case No. CV 13-4481-JPR<br>)<br>)<br>) MEMORANDUM OPINION AND ORDER<br>) AFFIRMING THE COMMISSIONER<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**I.    PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed February 24, 2014, which the Court has taken under submission without oral argument. For the reasons discussed below, the Commissioner's decision is affirmed and this action is dismissed.

## II.  BACKGROUND

Plaintiff was born on January 9, 1956, and has an associate's degree.  (AR 38, 164.)  She previously worked as an area supervisor at a recycling company, office manager, receptionist, and accounting clerk.  (AR 40-51, 208-14.)

On September 21, 2010, Plaintiff filed an application for DIB.  (AR 111, 164-67.)  She alleged that she had been unable to work since August 26, 2009, because of "[d]rop foot" and right-leg nerve damage.  (AR 164, 188.)  After Plaintiff's application was denied, she requested a hearing before an Administrative Law Judge.  (AR 109-10.)

A hearing was held on August 10, 2011, at which Plaintiff, who was represented by a nonattorney,[1] testified, as did a vocational expert ("VE").  (AR 33-108.)  In a written decision issued September 9, 2011, the ALJ determined that Plaintiff was not disabled.  (AR 18-28.)  On October 4, 2011, Plaintiff requested that the Appeals Council review the ALJ's decision.  (AR 13.)  On April 23, 2013, after considering new evidence submitted by Plaintiff, the Appeals Council denied the request for review.  (AR 1-5.)  This action followed.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and

---

[1]    The ALJ mistakenly stated that Plaintiff's representative was an attorney.  (AR 18; see AR 12 (appointment-of-representative form stating that representative was "non-attorney who is participating in the direct fee payment demonstration project").)

supported by substantial evidence in the record as a whole. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). Moreover, "when the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1163 (9th Cir. 2012); see also Taylor v. Comm'r of Soc. Sec. Admin., 659 F.3d 1228, 1232 (9th Cir. 2011). If the evidence as a whole can reasonably support either affirming or reversing, the reviewing court "may not substitute its judgment" for the Commissioner's. Reddick, 157 F.3d at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is

expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied.  § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied.  § 404.1520(a)(4)(ii).  If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii).  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional

4

capacity ("RFC")[2] to perform her past work; if so, the claimant is not disabled and the claim must be denied. § 404.1520(a)(4)(iv).  The claimant has the burden of proving she is unable to perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets that burden, a prima facie case of disability is established.  <u>Id.</u>  If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available in the national economy.  § 404.1520(a)(4)(v).  That determination comprises the fifth and final step in the sequential analysis.  § 404.1520; <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in any substantial gainful activity since August 26, 2009, her alleged onset date.  (AR 20.)  At step two, he concluded that Plaintiff had the severe impairments of "right peroneal nerve paralysis (foot drop), lumbar spine acute denervation in the distribution of the sciatic nerve and chronic denervation in the distribution of L4 and L5, obesity, and mild effusion of the right ankle and knee."  (AR 21 (citations omitted).)  He found that Plaintiff did not have any medically determinable heart, hand, shoulder, or mental impairment.  (<u>Id.</u>)  At step three, the ALJ determined that Plaintiff's impairments did not meet or equal

---

[2]   RFC is what a claimant can do despite existing exertional and nonexertional limitations.  20 C.F.R. § 404.1545; <u>see</u> <u>Cooper v. Sullivan</u>, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

any of the impairments in the Listing.  (AR 21-22.)  At step four, he found that Plaintiff had the RFC to

> lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk for four hours in an eight-hour workday.  She can occasionally engage in postural activities.  She can occasionally push and pull with her lower extremities.  The claimant can occasionally engage in overhead reaching with her right upper extremities [sic].  The claimant must use a cane for prolonged ambulation.  She can occasionally climb stairs and ramps.  The claimant cannot climb ladders, ropes, or scaffolds.  The claimant also must not be exposed to heights or hazards.[3]

(AR 23.)  The ALJ noted that Plaintiff's RFC was "consistent with a capacity between the exertional requirements of sedentary work and light exertional work" but "falls closer to the sedentary exertional level."[4]  (Id. (citations omitted).)  Based on the

---

[3]    Although the ALJ did not list Plaintiff's sitting limitations (see AR 23), he explicitly based her RFC on the opinion of consulting physician C. Friedman (id.), who found that Plaintiff could sit with normal breaks for a total of "about 6 hours in an 8-hour workday" (AR 253).  In any event, Plaintiff does not contend that the ALJ erred by failing to explicitly address any sitting limitation in the RFC.

[4]    "Light work" involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."  § 404.1567(b).  "Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls."  Id.  "To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities."  Id.  "Sedentary

VE's testimony, the ALJ concluded that Plaintiff was able to perform her past relevant work as an accounting clerk and receptionist, both of which are sedentary jobs. (AR 27.) Accordingly, the ALJ determined that Plaintiff was not disabled. (AR 27-28.)

**V. DISCUSSION**

Plaintiff claims the ALJ erred in (1) according reduced weight to the opinion of her treating physician and (2) assessing her credibility. (J. Stip. at 7.)

A.   The ALJ Did Not Err in Evaluating Plaintiff's Treating
     Physician's Opinion

Plaintiff contends that the ALJ erred in according reduced weight to the assessment of her treating physician, Dr. Dee Beng Lim. (Id. at 8-14.)

1.   Applicable law

Three types of physicians may offer opinions in Social Security cases: "(1) those who treat[ed] the claimant (treating physicians); (2) those who examine[d] but d[id] not treat the claimant (examining physicians); and (3) those who neither examine[d] nor treat[ed] the claimant (non-examining physicians)." Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than the opinion of a doctor who examined but did not treat the claimant, and an examining physician's opinion is generally entitled to more

_____

work" involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). Sedentary work involves sitting most of the time but may involve occasional walking or standing for brief periods of time. Id.

weight than that of a nonexamining physician.   Id.

The opinions of treating physicians are generally afforded more weight because they are employed to cure and have a greater opportunity to know and observe the claimant.   Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).  If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight.   § 404.1527(c)(2).  If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors.   § 404.1527(c)(2)-(6).

When a treating doctor's opinion is not contradicted by some evidence in the record, it may be rejected only for "clear and convincing" reasons.   See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31).  When a treating physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it.   Id.

        2.   Relevant facts[5]

On December 17, 2010, Dr. Sarah L. Maze, a "board eligible" neurologist, examined Plaintiff at the Social Security

---

[5]   Because the parties are familiar with the facts, they are summarized here only to the extent relevant to the contested issues.

Administration's request.  (AR 248-51.)  Based on her examination findings, Dr. Maze diagnosed "[r]ight leg discomfort" and opined that Plaintiff was able to lift 50 pounds occasionally and 25 pounds frequently, stand and walk for six hours in an eight-hour day, and sit for six hours in an eight-hour day.  (AR 250-51.) She believed Plaintiff could not perform "repetitive bending, squatting and stooping."  (AR 251.)

On January 7, 2011, state-agency physician Dr. C. Friedman, who specialized in internal medicine,[6] reviewed Dr. Maze's findings and opined that Plaintiff suffered from right-leg discomfort that was probably caused by lumbar radiculopathy or peripheral nerve disease.  (AR 252-56.)  He believed Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand and walk four hours in an eight-hour day, using a cane for prolonged ambulation; sit about six hours in an eight-hour day; and occasionally push or pull with the right leg.  (AR 253.)  Dr. Friedman believed Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; could never climb ladders, ropes, or scaffolds; and must avoid hazards. (AR 254-55.)  Dr. Friedman stated that he had reviewed Dr. Maze's opinion but "[c]onsidering [the examination findings] as well as giving [Plaintiff] the benefit of doubt, it is my medical opinion that greater functional limitations are reasonably supported in

---

[6]     Dr. Friedman's electronic signature includes a medical specialty code of 19, indicating internal medicine.  (AR 256); see Program Operations Manual System (POMS) DI 26510.089, U.S. Soc. Sec. Admin. (Oct. 25, 2011), http://policy.ssa.gov/poms. nsf/lnx/0426510089; POMS DI 26510.090, U.S. Soc. Sec. Admin. (Aug. 29, 2012), http://policy.ssa.gov/poms.nsf/lnx/0426510090.

this case."  (AR 256.)

On July 25, 2011, Plaintiff's treating physician, Dr. Lim, a family physician, wrote a letter and completed a multiple-impairment questionnaire regarding Plaintiff's medical conditions.  (AR 323-24, 326-33.)  In the letter, Dr. Lim wrote that Plaintiff had right peroneal-nerve paralysis resulting in foot drop and numbness of the thigh, ankle, and toes, which had not significantly improved with physical therapy and chiropractic manipulation.[7]  (AR 323.)  He wrote that Plaintiff also had denervation of the sciatic nerve and distribution of L4 and L5, as documented by EMG; trapezius myofasciitis[8] with severe neck and shoulder-blade pain; and "[d]epression because of the feeling of hopelessness about her overall prognosis."  (Id.)  Dr. Lim opined that Plaintiff "can not [sic] lift over 10 lbs weight, experiencing severe neck pain the following day"; could walk "less than one city block"; and could "hold his [sic] head up" only with "severe neck pain."  (Id.)  He opined that Plaintiff was "totally disabled."  (Id.)

In the multiple-impairment questionnaire, Dr. Lim stated that he had treated Plaintiff every two weeks since August 9,

---

[7]    In his letter, Dr. Lim stated that Plaintiff had numbness of the left thigh, ankles, and toes because of her nerve paralysis (AR 323), but this appears to be a mistake because her nerve problems involved her right leg (see AR 326 (Dr. Lim's multiple-impairment questionnaire stating that Plaintiff had "R foot drop, numbness of R thigh, leg, ankle and toes"), 245 (electromyogram and nerve-conduction study showing acute denervation in right peroneal nerve).)

[8]    Myofasciitis is inflammation of a muscle and its fascia.  The Free Dictionary, http://medical-dictionary.thefreedictionary.com/myofascitis (last accessed May 23, 2014).

10

2009.  (AR 326.)  He noted Plaintiff's diagnoses as severe right peroneal denervation; denervation of the right sciatic, L4, and L5 nerves; trapezius myofasciitis; and depression.  (Id.)  Dr. Lim wrote that his diagnoses were supported by EMG and x-ray results and clinical findings including right foot drop; numbness of the right thigh, leg, ankle, and toes; neck and shoulder blade pains with migraine headache; hand numbness; severe depression; and feelings of hopelessness and despair.  (AR 326-27.)  He wrote that Plaintiff's primary symptoms were pain and numbness of the right thigh, leg, and toes and "easy fatigue"; she also had throbbing and shooting pain of the neck, lower back, and right leg "all day."  (AR 328.)  Dr. Lim rated Plaintiff's pain as an eight and fatigue a nine on a scale of 10.  (AR 328.)

Dr. Lim opined that Plaintiff could sit less than one hour and stand and walk less than one hour in an eight-hour day.  (AR 328.)  He believed Plaintiff needed to get up and move around for 30 minutes every 30 minutes and needed to rest for 30 minutes every 30 minutes.  (AR 328-29, 331.)  Plaintiff could lift up to 10 pounds occasionally, carry up to five pounds occasionally, and never lift or carry more than that or any weight frequently.  (AR 329.)  She was significantly limited in performing repetitive reaching, handling, fingering, and lifting, and she was "essentially precluded" from performing any grasping, turning, or twisting of objects; using her fingers or hands for fine manipulations; and using her arms for reaching.  (AR 329-30.)  He believed that Plaintiff's conditions interfered with her ability to hold her neck in a constant position, her pain would "constantly" interfere with her attention and concentration, and

11

her "severe depression" contributed to the severity of her symptoms and limitations. (AR 330-31.) Plaintiff was incapable of tolerating even "low stress" because of her depression. (AR 331.) Plaintiff would be absent from work because of her conditions more than three times a month. (AR 332.) Dr. Lim also believed that Plaintiff needed to avoid wetness, noise, temperature extremes, and heights, and she could not push, pull, kneel, bend, or stoop. (Id.) He opined that Plaintiff's symptoms and limitations applied as of "2006 – 2007." (Id.)

### 3.   Discussion

The ALJ based his RFC assessment largely on the opinion of Dr. Friedman, who had "a strong understanding of Social Security rules and regulations," because Plaintiff's treatment records, the objective findings in the record, and Dr. Maze's examination findings supported it. (AR 23.) The ALJ accorded less weight to Dr. Maze's opinion, finding that Plaintiff's treatment records were "more consistent with [Plaintiff] standing and walking for four hours in an eight-hour workday, rather than for six-hours in an eight-hour workday," and her examination findings were "consistent with limiting [Plaintiff] to sedentary exertional work." (AR 24.) Finally, the ALJ considered Dr. Lim's opinion regarding Plaintiff's functional limitations but gave "greater weight" to Dr. Friedman's opinion. (AR 24-25.)

The ALJ gave specific and legitimate reasons for discounting Dr. Lim's controverted opinion. First, the ALJ correctly concluded that he need not accept Dr. Lim's assertion that Plaintiff was "totally disabled" (AR 323) because the determination of a claimant's ultimate disability is reserved to

1  the Commissioner. (AR 24-25); see § 404.1527(d)(1) ("A statement

2  by a medical source that you are 'disabled' or 'unable to work'

3  does not mean that we will determine that you are disabled.");

4  SSR 96-5p, 1996 WL 374183, at *5 (July 2, 1996) (treating-source

5  opinions that a person is disabled or unable to work "can never

6  be entitled to controlling weight or given special

7  significance"); see also McLeod v. Astrue, 640 F.3d 881, 885 (9th

8  Cir. 2011) (as amended) ("A disability is an administrative

9  determination of how an impairment, in relation to education,

10 age, technological, economic, and social factors, affects ability

11 to engage in gainful activity."). The ALJ therefore was not

12 obligated to accept Dr. Lim's opinion that Plaintiff was totally

13 disabled.

14       Second, the ALJ permissibly discounted Dr. Lim's opinion to

15 the extent it was inconsistent with an RFC for nearly sedentary

16 work because it was unsupported by his own treatment notes and

17 the other record evidence, including Dr. Maze's examination

18 findings. (See AR 21, 23-24); § 404.1527(c)(4) (explaining that

19 more weight should be afforded to medical opinions that are

20 consistent with the record as a whole); Valentine v. Comm'r Soc.

21 Sec. Admin., 574 F.3d 685, 692-93 (9th Cir. 2009) (contradiction

22 between treating physician's opinion and his treatment notes

23 constitutes specific and legitimate reason for rejecting

24 opinion); Houghton v. Comm'r Soc. Sec. Admin., 493 F. App'x 843,

25 845 (9th Cir. 2012) (holding that ALJ's finding that doctors'

26 opinions were "internally inconsistent, unsupported by their own

27 treatment records or clinical findings, [and] inconsistent with

28 the record as a whole" constituted specific and legitimate bases

for discounting them).

Indeed, Dr. Lim opined that Plaintiff was disabled in part because of her "severe" depression (AR 331), but as the ALJ found, "the record contains no evidence of treatment for any mental impairment." (AR 21.)  Indeed, it was not until November 2011, three months after the ALJ issued his decision, that Dr. Lim first noted that Plaintiff was "very depressed," in part because she had "lost the appeal for social security disability."[9]  (AR 334.)  Even then, Dr. Lim did not prescribe psychiatric medication, refer her to a therapist, or recommend any other mental-health treatment.  Moreover, examining physician Maze found that Plaintiff's attention and concentration were unimpaired and her intellectual functioning was in the normal range (AR 249), which further undermined Dr. Lim's finding that Plaintiff's depression contributed to her functional limitations and rendered her unable to tolerate even low stress (AR 331).

Dr. Lim also opined that "physical therapy and chiropractic manipulation" had resulted in "no significant improvement" in Plaintiff's nerve paralysis, foot drop, and numbness.  (AR 323.) But Plaintiff's medical records, including Dr. Lim's own progress notes, indicate that Plaintiff's symptoms improved with treatment.  In November 2010, Dr. Lim noted that Plaintiff "had been receiving physical therapy, acupuncture, and has been

---

[9]     This treatment note, along with others that postdate the ALJ's decision, was submitted to the Appeals Council, and it considered them when denying Plaintiff's request for review. (See AR 1-5.)  The Court therefore considers the new records in determining whether substantial evidence supports the ALJ's decision.  See Brewes, 682 F.3d at 1163; see also Taylor, 659 F.3d at 1232.

swimming 3x a week" and "has seen gradual improvement with her numbness and coldness of the right leg." (AR 236.)  In November 2011 and January and February 2012, Dr. Lim noted that Plaintiff's chiropractic treatments and acupuncture had resulted in "slow gradual improvement of her symptoms." (AR 334, 336, 338.)  Plaintiff's physical therapist, moreover, noted that Plaintiff "reports she gets relief [with] PT visits" (AR 280), and Plaintiff testified that physical therapy "really did help" (AR 64).  In March 2010, another treating physician, Mohsen Ali, who was board certified in psychiatry and neurology, reviewed Plaintiff's electrodiagnostic study and opined that it was "consistent with peripheral neuropathy with evidence of regeneration that indicates gradual improvement." (AR 245.)  And in June 2011, Dr. Ali found that Plaintiff's sciatic neuropathy was "much improved" on medication.  (AR 310.)

The ALJ also noted that "objective findings in the record" were consistent with Plaintiff's RFC for nearly sedentary work (AR 23) rather than Dr. Lim's significantly more restricted limitations.  Indeed, although various tests revealed some abnormalities, many results were normal.  For example, Plaintiff's electromyograms showed denervation in the right peroneal nerve, but nerve-conduction studies showed normal motor and sensory nerve conduction.  (AR 245, 312.)  A right-foot MRI showed only "mild" effusion, and a right-knee MRI showed mild effusion and some degeneration in part of the medial meniscus "with possible minute horizontal tear." (AR 237-38, 241-42.)  Right-foot and right-knee x-rays were normal (AR 243-44), as was a lumbar-spine MRI (AR 239-40).

Dr. Maze, moreover, examined Plaintiff and found she had some reduced sensation along the outer aspect of the right foot, reduced grip strength on the right, a cooler right leg, "5-/5" motor function of the right hip, leg, and foot, and reflex asymmetry at the knees, but she had full "5/5" motor function in all other joints, fair range of motion of the back, normal coordination, and normal range of motion of the knees.  (AR 249-50.)  Such objective findings support the ALJ's conclusion that Plaintiff suffered from physical impairments that limited her to nearly sedentary work,[10] but they fail to support Dr. Lim's opinion that Plaintiff was totally disabled (AR 323) and unable to, for example, sit for an hour or stand and walk for an hour in an eight-hour day (AR 328); grasp, turn, or twist objects (AR 329); reach with either hand (AR 330); use her fingers or hands for fine manipulation (id.); hold her neck in a constant position (id.); or tolerate wetness, noise, or temperature extremes (AR 332).[11]  The ALJ was therefore entitled to discount Dr. Lim's

---

[10]   The ALJ found that Plaintiff had an RFC for work that somewhat exceeded the sedentary level and ultimately concluded that she was not disabled because she could perform two of her previous jobs, both of which were sedentary.  (AR 27.)  Thus, even if the ALJ should have limited Plaintiff to only sedentary work, his failure to do so was harmless.  See Powell v. Comm'r Soc. Sec., 318 F. App'x 550, 551 (9th Cir. 2009) (ALJ's error in concluding plaintiff had RFC for light, rather than sedentary, work "was harmless because the ALJ held, at the next step, that Plaintiff was capable of performing her past relevant work — all of which was sedentary").

[11]   Indeed, Dr. Lim's findings in the multiple-impairment questionnaire are often soundly refuted by the record.  For example, Dr. Lim stated that his description of Plaintiff's symptoms and limitations – presumably including her total disability – applied as of "2006 - 2007" (AR 332), but he did not

16

opinion because it conflicted with his own treatment notes and was unsupported by the medical evidence.

Finally, the ALJ was entitled to rely on Dr. Friedman's opinion instead of Dr. Lim's because Dr. Friedman reviewed Dr. Maze's examination findings and his opinion was consistent with or even more restrictive than them.  <u>See</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 957 (9th Cir. 2002) ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record."); <u>see also</u> <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1227-28 (9th Cir. 2009) (upholding RFC determination when ALJ relied on state-agency physician's opinion over that of treating physician).  Any conflict in the properly supported medical-opinion evidence was "solely the province of the ALJ to resolve."  <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1041 (9th Cir. 1995).

Remand is not warranted on this ground.

B.   <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

Plaintiff contends that reversal is warranted because the ALJ "proffered no valid reasons for disbelieving [Plaintiff's] testimony."  (J. Stip. at 22.)  As discussed below, however, the ALJ provided clear and convincing reasons for discounting Plaintiff's testimony to the extent it was inconsistent with her RFC for nearly sedentary work.

---

start treating her until August 2009 (AR 326).  Moreover, Plaintiff testified that she worked until August 2009 (AR 39-40) and that in the two years before that, she worked 16 hours a day, six days a week (AR 43, 62-63).

1          1.   Applicable law

2          An ALJ's assessment of symptom severity and claimant

3    credibility is entitled to "great weight."  See Weetman v.

4    Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779

5    F.2d 528, 531 (9th Cir. 1986).  "[T]he ALJ is not required to

6    believe every allegation of disabling pain, or else disability

7    benefits would be available for the asking, a result plainly

8    contrary to 42 U.S.C. § 423(d)(5)(A)."  Molina v. Astrue, 674

9    F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks

10   omitted).  In evaluating a claimant's subjective symptom

11   testimony, the ALJ engages in a two-step analysis.  See

12   Lingenfelter, 504 F.3d at 1035-36.  "First, the ALJ must

13   determine whether the claimant has presented objective medical

14   evidence of an underlying impairment [that] could reasonably be

15   expected to produce the pain or other symptoms alleged."  Id. at

16   1036 (internal quotation marks omitted).  If such objective

17   medical evidence exists, the ALJ may not reject a claimant's

18   testimony "simply because there is no showing that the impairment

19   can reasonably produce the degree of symptom alleged."  Smolen,

20   80 F.3d at 1282 (emphasis in original).  When the ALJ finds a

21   claimant's subjective complaints not credible, the ALJ must make

22   specific findings that support the conclusion.  See Berry v.

23   Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent affirmative

24   evidence of malingering, those findings must provide "clear and

25   convincing" reasons for rejecting the claimant's testimony.

26   Lester, 81 F.3d at 834.  If the ALJ's credibility finding is

27   supported by substantial evidence in the record, the reviewing

28   court "may not engage in second-guessing."  Thomas, 278 F.3d at

18

959.

## 2. Background

In a November 2010 exertional questionnaire, Plaintiff wrote that as a result of her right-leg pain and numbness, she had to lie down every two hours "just to be able to walk a very short distance," had a hard time getting up the two steps on her front porch, and was "pretty much house bound." (AR 197.) She was able to lift two bags of groceries and one bag of trash a week, and she could take her trash can to the curb once a week. (AR 198.)

She wrote that her pain medication, gabapentin,[12] made her sleepy and that when using it she was house bound. (AR 197, 199.) On an average day, she would "go from bed to chair" and "try to walk around [her] house every couple of hours." (AR 197.) She went to the doctor's office once a week and grocery shopping every two weeks. (AR 197-98.) Plaintiff could not clean her house or do her laundry because she could not stand, but she could drive for 10 to 20 minutes to the store and to the doctor's office. (AR 198-99.) She had a brace, walker, and cane, but the brace hurt her because it did not fit properly. (AR 199.) She used the walker to get down her back steps. (Id.) In a November 2010 pain questionnaire, Plaintiff wrote that her daily activities consisted of "go[ing] from bed to chair" and "watch[ing] T.V." and that she could walk from her home to her

---

[12] Gabapentin is an anticonvulsant used to control seizures and treat certain types of neuralgia and restless-leg syndrome. Gabapentin, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last updated July 15, 2011).

19

car with a cane, stand 15 to 20 minutes, and sit for an hour and a half at a time. (AR 195-96.)

In a December 2010 function report, Plaintiff wrote that her daily activities included getting up, making coffee, meditating for one and a half hours, taking her medicine, eating, paying bills, checking the ads in the newspaper, walking from her living room to the kitchen and back at least every other hour, using her TENS unit,[13] lying down to rest, exercising her foot and ankle, and watching television. (AR 200.) She showered and washed her hair once a week, and it took her one to two hours to get dressed. (AR 200-01.) She could not stand long enough to cook on the stove or wash dishes. (AR 202.) Plaintiff sat in a chair to water her lawn and folded her laundry after it was washed by someone else. (Id.) She went to the doctor's office once a week and grocery store once every week or two; she also visited the "smoke shop" regularly and went to the bank once a month. (AR 203-04.) Plaintiff talked with friends on the phone every week. (AR 204.)

Plaintiff wrote that she could stand for 15 to 20 minutes, sit for 30 minutes, and climb a maximum of two stairs. (AR 205.) Her conditions affected her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, and use her hands. (Id.) She used a walker, cane, and brace, but she used her walker only

---

[13]    A Transcutaneous Electrical Nerve Stimulator ("TENS") is "[a] technique used to relieve pain in an injured or diseased part of the body in which electrodes applied to the skin deliver intermittent stimulation to surface nerves, blocking the transmission of pain signals." The American Heritage Dictionary 1794 (5th ed. 2011).

in her backyard to sit and water.  (AR 206.)

At the hearing on August 10, 2011, Plaintiff testified that she stopped working because she "could only take a few steps" and "couldn't walk very far."  (AR 52.)  She had pain, spasms, and a cold feeling in her right foot, numbness of her hands, and pain in her neck and right shoulder.  (AR 65-69, 72, 95-96.) Plaintiff testified that her medication, gabapentin, made her sleepy and lethargic.  (AR 99.)

Plaintiff testified that she could walk only four or five steps or for 10 minutes with her cane, and she could not walk without her cane.  (AR 70, 75, 91.)  She could sit for two hours and stand for 15 minutes using a cane and 10 minutes without using a cane.  (AR 75-76.)  Plaintiff testified that when she walked around her house, she used a cane and leaned on the wall, and she would not be able to walk down the sidewalk using just her cane.  (AR 92.)  Her daily activities included exercising her leg and arms for about 15 minutes each twice a day, walking around her house for 15 or 20 minutes at a time, and lying in bed for an hour five or six times in the morning and two times in the afternoon.  (AR 77-79.)  Plaintiff could not clean her own house. (AR 80.)  She shopped for groceries once a week, and her gardener helped her take the groceries inside the house.  (AR 81.)  She was able to drive herself to the grocery store and doctor's appointments.  (AR 81-82.)

Plaintiff testified that she was unable to work because she "couldn't get showered and dressed" and couldn't "stand[] in front of the mirror to brush [her] teeth."  (AR 84-86.) Plaintiff testified that she could not sit down to brush her

teeth because she had a "little tiny bathroom." (AR 86.)  When questioned by the ALJ, she admitted that in late 2010 she was swimming for exercise but said she "d[idn't] have a pool right now."  (AR 60; see also AR 325.)

### 3.  Discussion

The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms but that her "statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are inconsistent with" her RFC.  (AR 25.)  Reversal is not warranted based on the ALJ's alleged failure to make proper credibility findings or properly consider Plaintiff's subjective symptoms.

The ALJ permissibly discounted Plaintiff's credibility because she had undergone "largely routine treatment" for her allegedly debilitating conditions.  (AR 26.)  See Tommasetti v. Astrue, 533 F.3d 1035, 1040 (9th Cir. 2008) (ALJ may infer that claimant's "response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain"); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (doctor's prescribed "conservative treatment" suggested "lower level of both pain and functional limitation").  Plaintiff's right-leg condition was treated with physical therapy and acupuncture, a TENS unit, gabapentin, and prednisone, which she had taken for about two months.[14]  (AR 69-71, 98; see also AR 236

---

[14]  Prednisone is a corticosteroid used to treat conditions such as arthritis, allergic reactions, and certain types of cancers.  Prednisone, MedlinePlus, http://www.nlm.nih.gov

(Dr. Lim's treatment note showing Plaintiff's treatment with gabapentin, physical therapy, and acupuncture).)  She had not received or had recommended surgery or injections for her right-knee condition (AR 71) and had received only one cortisone shot for her shoulder (AR 97-98).  Plaintiff testified that she received no treatment at all for her hand numbness.  (AR 73.)

As noted in Section A.3, moreover, Plaintiff's medical records and her own testimony showed that her condition gradually improved with physical therapy and acupuncture.  And Dr. Ali, Plaintiff's treating neurologist, noted that Plaintiff's sciatic neuropathy had "much improved" on prednisone and opined that her condition was "stable, improving."  (AR 310.)  Plaintiff similarly testified that she "didn't have any pain" while taking prednisone, although she also said she would "never go on it again because it's not worth the pain coming back."  (AR 69-70.)  Plaintiff testified that her shoulder condition improved after the cortisone shot (AR 97-98) and that a brace helped her walk, although she didn't wear it anymore because it no longer fit properly (AR 73, 75).  In a pain questionnaire, moreover, Plaintiff wrote that her gabapentin relieved her pain.  (AR 194.)  Plaintiff's response to conservative treatment undermines her complaints of debilitating pain.

The ALJ also permissibly discounted Plaintiff's testimony because it conflicted with the medical evidence.  (AR 21, 23-24.)  See Carmickle, 533 F.3d at 1161 ("Contradiction with the medical

_____

/medlineplus/druginfo/meds/a601102.html (last updated Sept. 1, 2010).  Prednisone reduces swelling and redness and changes the way the immune system works.  Id.

record is a sufficient basis for rejecting the claimant's subjective testimony."); <u>Lingenfelter</u>, 504 F.3d at 1040 (in determining credibility, ALJ may consider "whether the alleged symptoms are consistent with the medical evidence").  First, Plaintiff asserted that her medication, gabapentin, caused her to be so fatigued and sleepy that she was "house bound" (AR 197, 199), but the ALJ reasonably discounted those statements because "the record contains no evidence of [Plaintiff] complaining of this problem to any of her treating sources" (AR 26).[15]  <u>See</u> <u>Thomas</u>, 278 F.3d at 960 (ALJ permissibly discounted testimony regarding side effects when plaintiff "offer[ed] no objective evidence that her medications affected her concentration or caused dizziness"); <u>Morillas v. Astrue</u>, 371 F. App'x 880, 883 (9th Cir. 2010) (ALJ reasonably discounted testimony about the side effects of medications when "[n]othing in the medical records reflected any complaint to her health providers that her medications made her drowsy, and there was no evidence of any assessed functional limitation from her medications").[16]

---

[15]   Plaintiff argues that her allegations regarding her medication side effects are supported by Dr. Lim's depression diagnosis and chart notes indicating that she sometimes falls. (J. Stip. at 19-20.)  But as discussed above in Section A.3, the ALJ permissibly discounted Dr. Lim's finding of depression.  And in any event, nothing indicates that Dr. Lim or any other provider believed that it was Plaintiff's medication that caused her to suffer from depression or falls.

[16]   The ALJ also noted that "there is no record of [Plaintiff's] doctors adjusting her medication for any reason" (AR 26), but in fact, Dr. Lim noted on the check-off questionnaire that he had "substituted medications in an attempt to produce less symptomatology or relieve side effects" (AR 330). Dr. Lim, however, did not explain how or why medications were substituted, and his treatment notes do not state that Plaintiff

Second, the ALJ stated that "there is simply not enough evidence of debilitating impairments to make [Plaintiff's] allegations readily believable," noting that test results showed only "mild" effusion of the right leg and electrodiagnostic studies showed "normal motor and sensory function." (AR 26.) Indeed, as discussed in Section A.3, the objective evidence, while showing that Plaintiff did suffer from conditions that limited her ability to function above the sedentary level, fails to establish that, for example, she was unable to walk more than a few steps even when using a cane (AR 70, 75, 91) and needed to lie down for an hour seven or eight times a day (AR 77-79). Indeed, Dr. Maze examined Plaintiff and noted that she was "able to stand and walk independently."[17]  (AR 250.)

Finally, the ALJ permissibly discounted Plaintiff's credibility because her "activities of daily living are not consistent with the alleged degree of pain and impairment." (AR 26.)  The ALJ pointed to Dr. Lim's November 2010 treatment note

suffered from any side effects.  In any event, to the extent the ALJ erred in finding that "no record" showed that Plaintiff's doctors had adjusted her medication, it was harmless because he gave other permissible reasons for discounting her credibility. See Carmickle, 533 F.3d at 1162.

[17]    Plaintiff contends that the ALJ "flagrant[ly] misstat[ed]" the legal standard for finding disability (J. Stip. at 20-21) when he stated that "there is simply not enough evidence of debilitating impairments to make [Plaintiff's] allegations readily believable" (AR 26).  But as discussed, when assessing credibility, the ALJ was entitled to consider whether the evidence supported her claims of debilitating impairments. Ultimately, moreover, the ALJ properly concluded that given Plaintiff's RFC, she was not precluded from performing her previous sedentary work.  (AR 27.)  The ALJ therefore did not apply the wrong legal standard.

stating that Plaintiff was "swimming three times a week" (AR 26 (citing AR 325)) and Plaintiff's testimony that she peddles a bicycle at home for exercise, lives alone, and drives herself to the grocery store and doctor's appointments, among other things (id.).  Indeed, although Plaintiff was apparently swimming three times a week in November 2010, that same month she completed questionnaires describing her daily activities as limited to "go[ing] from bed to chair" (AR 195), "watch[ing] T.V." (id.), and "try[ing] to walk around my house every couple of hours" (AR 197); she also said she was "house bound" and able to shower only once a week (AR 199-200).  The ALJ clarified, moreover, that he was "not saying that [Plaintiff's] activities, by themselves, necessarily equate with work activity or show the ability to engage in work"; rather, they "suggest that [Plaintiff] has a better physical capacity than she has stated in the testimony," which alleged "a virtual absence of any activity." (AR 26.)  The ALJ noted that such conflict indicated that Plaintiff "has not been completely frank" and made him "cautious about fully accepting" her testimony.  (Id.)  This was a permissible reason to discount Plaintiff's credibility.  Smolen, 80 F.3d at 1284 (in assessing credibility, ALJ may use "ordinary techniques of credibility evaluation," such as "prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid"); accord Tommasetti, 533 F.3d at 1039; cf. Molina, 674 F.3d at 1113 ("Even where [claimant's] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment.").

26

1    In any event, even if the ALJ erred in relying on

2 Plaintiff's daily activities to discount her credibility, that

3 error was harmless because he gave other clear and convincing

4 reasons in support of his determination.  See Carmickle, 533 F.3d

5 at 1162 (when ALJ provides specific reasons for discounting

6 Plaintiff's credibility, decision may be upheld even if certain

7 reasons were invalid as long as "remaining reasoning and ultimate

8 credibility determination" were supported by substantial evidence

9 (emphasis omitted)).  Plaintiff is not entitled to remand on this

10 ground.

11 **VI.   CONCLUSION**

12    Consistent with the foregoing, and pursuant to sentence four

13 of 42 U.S.C. § 405(g),[18] IT IS ORDERED that judgment be entered

14 AFFIRMING the decision of the Commissioner and dismissing this

15 action with prejudice.  IT IS FURTHER ORDERED that the Clerk

16 serve copies of this Order and the Judgment on counsel for both

17 parties.

18

19 DATED: June 3, 2014         _____

20                            JEAN ROSENBLUTH
                              U.S. Magistrate Judge

21

22

23

24

25 _____

26    [18]   This sentence provides: "The [district] court shall
27 have power to enter, upon the pleadings and transcript of the
   record, a judgment affirming, modifying, or reversing the
28 decision of the Commissioner of Social Security, with or without
   remanding the cause for a rehearing."